THOMAS FIELDEN ET AL., APPELLANTS, *v.* PIERRE FRAN-
ÇOIS LAHENS ET AL., RESPONDENTS.

*Note, Accommodation — Authority of Partner to make or endorse — Notice.*
*Code,* §§ 136, 274.

As it is no part of the business of a mercantile firm to make or endorse
notes for third persons, there is no implied authority for an individual member
of such firm to make or endorse such paper in the firm name. Consequently
the holder of such paper, with notice that it was made or endorsed for purpose of
accommodation merely, without the consent of the firm, cannot recover upon it.

Where the maker of a note, endorsed by a firm, presents the same to be dis-
counted for his accommodation, such fact shows upon its face that it is a mere
accommodation endorsement.

PARKER, J.—This action was commenced in the Superior Court
of the City of New York, on the 21st of October, 1844, against
the Defendants, as alleged endorsers of three promissory notes, all
dated May 25th, 1844, two of them payable at ninety days, and
one at sixty days from date; one for $14,000, one for $13,500,
and the third for $21,221.43, making in all $48,721.43. They
were in the common form, signed by Alexander Caselli, as maker,
and endorsed with the name of J. Lahens, &c.

The Defendant, Louis Emile Lahens, appeared by one attorney,
and the Defendants, Pierre François Lahens and Edward Ernest
Lahens, by another, and put in separate pleas of the general issue,
and the cause was referred to three referees, who, upon the trial,
which commenced February 4, 1858, nonsuited the Plaintiffs.

The referees found as follows:

First. That at the time of the making of and endorsing of the
promissory notes in the declaration in this action set forth, Joshua
Fielden, John Fielden, James Fielden, Thomas Fielden, Daniel
Campbell, and William C. Pickersgill were copartners in trade
under the respective firms of Fielden Brothers & Co., at the city
of Liverpool, in England, and of W. C. Pickersgill & Co., at the
city of New York; that the said Joshua Fielden, John Fielden,
and James Fielden have since departed this life, and that the said
Thomas Fielden, Daniel Campbell, and W. C. Pickersgill have

survived them; also, that at the time of the making and endorsing of the said promissory notes, Pierre François Lahens, Edward Ernest Lahens, Edward Gaudard, and Louis Emile Lahens were copartners in mercantile business at Havre, in France, and at the city of New York, respectively, under the firm of J. Lahens & Co.; that the said Louis Emile Lahens was the only one of said copartners then residing in the city of New York, or in the United States; that the said Edward Gaudard has since departed this life, and that the Defendants in this action have survived him.

Second. That the endorsements of the name of J. Lahens & Co. upon the said promissory notes were made and executed in the city of New York by the Defendant, Louis Emile Lahens, one of the members of said firm, and delivered by him to Alexander Caselli, the maker of the said notes, in said city, for the accommodation of said Alexander Caselli, and that no consideration was received by the said J. Lahens & Co. for the same.

Third. That the notes so endorsed were delivered by the said Alexander Caselli, the maker thereof, to the said firm of W. C. Pickersgill & Co. at said city of New York.

Fourth. That the said W. C. Pickersgill & Co., by the fact of such possession and delivery of the said notes to them by the maker thereof, after the same had been so endorsed with the name of said J. Lahens & Co., had notice that the said J. Lahens & Co. had received no value therefor, and that the said endorsements were made for the benefit and accommodation of the maker of the said notes.

Fifth. That the Plaintiffs had failed to prove a joint liability of the Defendants, and further report that, upon the said facts so found, as a conclusion of law, the Plaintiffs, having so failed to prove a joint liability of all the Defendants, cannot recover in this action against the said Defendants, or against any or either of them.

And we do therefore decide and determine that all the Defendants are entitled to judgment against the Plaintiffs, and for their costs.

The judgment entered upon the report of the referees was affirmed by the Court at General Term.

The questions considered and decided by the referees, as their report shows, were: first, whether the firm of J. Lahens & Co. was liable upon the endorsements; and second, whether, if it was not, a separate judgment could be rendered in the action against Louis Emile Lahens, who made the endorsement.

The facts found, bearing upon the first question, are that the firm of J. Lahens & Co. was a mercantile firm; that Louis Emile Lahens, one of the copartners, made the endorsements in the name of the firm, for the accommodation of the maker, without consideration to the firm; that the Plaintiffs received the notes, so endorsed, from the hands of the maker, and that by the fact of their so receiving them they had knowledge that the firm of J. Lahens & Co. had received no value therefor, and that the endorsements were made for the maker's accommodation.

These facts undoubtedly warrant the conclusion of law that the firm was not liable upon the endorsement.

The principle of the cases is, that inasmuch as it is no part of the business of a mercantile firm to make or endorse notes, as a firm, for third persons, there is no implied authority for one member to endorse or affix the name of the firm to negotiable paper, in which the partnership has no interest for such purpose, and that the holder of such paper, so endorsed, who takes it with notice that the endorsement was made for the accommodation of the maker, cannot hold the firm liable upon it (Stall v. Catskill Bank, 18 Wend. 466, 477, 478; Bank of Rochester v. Bowen, 7 Wend. 158; Joyce v. Williams, 14 Wend. 141; Gansevoort v. Williams, id. 133; Austin v. Vandermark, 4 Hill, 259).

The finding that the Plaintiffs had notice of the fact that the endorsements were mere accommodation endorsements, it is insisted by the Plaintiffs' counsel, is but a conclusion of law, and not a finding of fact, and is, therefore, open to examination. Inasmuch as the fact of notice is based upon the facts of the possession of the notes by the maker, and his delivery of them, bearing the endorsement of J. Lahens & Co., to the Plaintiffs, thereby

using them for his own benefit, the question of the legal sufficiency of such facts to constitute notice to the Plaintiffs is undoubtedly involved in the finding. Treating it, therefore, as a conclusion of law, from the facts distinctly found and necessarily inferred, I think the referees right in their conclusions.

It was said by the Chancellor, in Stall *v.* Catskill Bank (18 Wend. 478), " If the drawer of a note carries it to a bank to get it discounted on his own account, or transfers it to a third person, with the name of a firm endorsed thereon, the transaction on its face shows that it is a mere accommodation endorsement, or the note would not be in the hands of the drawer; and the bank, or person who receives it from the drawer, being thus chargeable with notice that the firm are mere sureties of the drawer, and that it has not passed through their hands in the ordinary course of partnership business, the members of the firm who have been made sureties without their consent are not liable to such holder of the note."

This statement of the rule is, I think, substantially correct. The note being held by the maker, and put into circulation by him, in his own business, and for his own advantage, is evidence to the party taking it that whatever endorsements may be upon it were made for the maker's benefit, and not in the ordinary course of business; for, in the ordinary course of business, it would have passed from the maker to the payer and endorser. The party receiving it, therefore, from the maker, in payment of the maker's debts, assumes the risk of being able to show that the endorsement was in the usual course of business, and that the partners all consented to the act of the one who made the endorsement. As between the firm and the holder of the paper, this is but a reasonable rule. The partners are liable to a bonâ fide holder *without notice* in such case, only because he has the right to presume that the endorsement was made in the usual course of the partnership business, and, therefore, within the scope of the authority of the individual member of the firm who made it. But when the circumstances are such as to inform the holder of the fact that the endorsement was not made in the course of the partnership business, such presump-

tion is excluded; and it would be inequitable as well as illegal, as between the firm and the holder, for the Court to presume the assent of the firm in favor of the holder thus notified (Austin *v.* Vandermark, 4 Hill, 262; The Bank of Vergennes *v.* Cameron, 7 Barb. 143).

The finding that the Plaintiffs had notice that the endorsements were for Caselli's accommodation, being warranted, it follows that no judgment could be rendered upon them against the members of the firm, other than Louis Emile Lahens.

The next question is, could a several judgment be given against Louis Emile Lahens?

It was well settled at common law that in an action against several Defendants, on an alleged joint contract, no recovery could be had against any of them, unless a joint contract made by all of them was established (Mitchell *v.* Ostrom, 2 Hill, 520).

The Code has changed this rule in respect to actions commenced since it took effect. Section 136 of the Code has this provision: "If all the Defendants have been served, judgment may be taken against any or either of them severally, when the Plaintiff would be entitled to judgments against such Defendant or Defendants, if the action had been against them or any of them alone." Section 274 has this: "Judgment may be given for or against one or more of several Plaintiffs, and for or against one or more of several Defendants."

Section 8 restricts the application of that portion of the Code relating to civil actions to such as are commenced after the first day of July, 1848, except where otherwise provided.

By enactments in 1848 and 1849 certain sections of the Code were applied to rules commenced before it took effect, but §§ 136 and 274 are not among the number so applied. In 1851 § 459 of the Code was amended so as to read as follows: "The provisions of this act apply to *future proceedings* in actions or suits heretofore commenced and now pending, as follows: 1. If there have been no pleading therein, to the pleadings and all subsequent proceedings: 2. When there is *an issue* of law or *of fact*, or any other question of fact to be tried, *to the trial and all subsequent proceedings.*"

This section the learned Court below held did not extend the provisions of §§ 136 and 274 to suits pending when the Code went into operation. I confess I am differently impressed as to the effect of that section. It seems to me that it is within the scope and intent of its provisions to allow judgment to be taken against any or either of the Defendants severally, when the Plaintiff would be entitled to judgment against such Defendant or Defendants, if the action had been against them or any of them, as § 136 provides.

The proceeding for which the Appellants contended—the entry of a several judgment against Louis Emile Lahens—is a proceeding in the action such as § 136 provides for, and the language of § 459 is clearly broad enough to apply § 136 to this case. Section 459, in effect, says that the trial and all subsequent proceedings, in actions brought before the Code took effect, in which an issue had been joined and not tried, are to be conducted in all respects as though the actions had been brought after the Code took effect.

Upon the trial of the case at bar came up the question, what was to be the course of proceedings? But one of the Defendants being shown to be liable upon the endorsements, and two of the Defendants not liable, under the Code, confessedly the thing to be done upon the trial, in such case, is to dismiss the complaint as to the two, and to render judgment against the one. Any other course in respect to the present case is a failure to apply the provision of the Code to the proceedings in the case, as § 459 requires.

The injustice of an enactment which, in effect, deprives a Defendant of a perfect defence to the action, and changes his right to recover costs into an obligation to pay them, is urged, as showing that the Legislature could not have intended to apply the new rule in question to pre-existing suits. The defence insisted upon is a mere technical one, not founded on the merits, and the advantage which the Defendant had under the old rule, a mere adventitious one dependent upon a then existing rule of a practice or proceeding—a mere *formal* proceeding—a *mode* of arriving at a result—the judgment to which the Plaintiffs have shown them-

selves entitled—such advantages are not usually deemed entitled to protection, upon a legislative change of modes of procedure.

Thus, prior to the Code, a variance upon the trial between the allegation in a pleading and the proof might be fatal to the Plaintiff's case, which, under § 169 of the Code, would be disregarded. If the Plaintiff, in an action commenced prior to the Code, had made an actual averment in his declaration, *that* gave the Defendant an advantage which would have operated as a defence, and entitled him to costs; and yet the legislature, by the act of April 11th, 1849, chapter 438, expressly apply § 169 of the Code to actions pending when ·the Code took effect ; by which section, such inaccuracy, which, as it stood, effectually shielded the Defendant from a recovery against him, might be deemed immaterial and wholly disregarded.

Again, in an action before the Code, a party Defendant could not be required to give evidence in favor of his adversary, and so stood secure against a judgment when he and the Plaintiff were the only depositaries of the facts on which the cause of action depended. This was a technical advantage of which the legislature did not hesitate to deprive him by the same act of 1849, when it provided that § 390 of the Code, which allows a party to an action to be examined as a witness at the instance of the adverse party, should apply to the pre-existing suits.

It is difficult to see any more injustice done the Defendant in the application of § 136 to pre-existing suits, than in the application to them of §§ 169 and 309, and various other sections especially applied by the act of 1849, having a similar effect.

The advantages held by parties in those suits, depending not upon rights, but upon remedies, the Legislature seems not to have been careful to protect, but on the contrary quite ready to disregard, in providing for uniformity of proceedings in suits, whether commenced before or after the Code. So that it would not be safe, I think, to infer that there could have been no intent through § 459 to apply § 136 to pre-existing suits.

The exception to the exclusion of the Defendants' articles of

Opinion by PARKER, J.

copartnership cannot be sustained. It cannot be pretended that, under the rules governing trials at law, the Plaintiffs were, after having closed their case, entitled to open it and introduce evidence, not rebutting, but competent and proper in the first instance to make out their case. The referees had the right, in their discretion, to admit or exclude this evidence, and their decision is not subject to review upon appeal.

The referees decided correctly in admitting the deposition of Caselli. It was taken upon a commission in 1845, upon an examination in which the parties joined. So far as appears, the commission and return were regular, and there was no objection to the examination when taken. If the witness was then incompetent on the ground of interest, that might have been good cause of objection to the commission. No objection, however, so far as appears, was then made. But that he was interested was no ground of exclusion when the testimony was offered on the trial. He was then a competent witness, and his evidence was properly received.

The judgment of the Court below is right as to the Defendants Pierre François Lahens and Edward Ernest Lahens, and to that extent should be affirmed, with costs.

But as to Louis Emile Lahens, inasmuch as it appears that the Plaintiffs were nonsuited as to him, not because they failed to show him liable, but because the other Defendants were not jointly liable with him, the judgment is erroneous, and should be reversed, and a new trial granted, costs to abide the event.

Affirmed as to P. F. Lahens and E. E. Lahens, and reversed as to L. E. Lahens.